CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:24cv00254 |
| MADELINE FFITCH, | ) |
| Defendant, and | ) By: Elizabeth K. Dillon |
| | ) Chief United States District Judge |
| COMMONWEALTH OF VIRGINIA, | ) |
| Intervenor.[1] | ) |

**MEMORANDUM OPINION**

This case is one of five cases currently before this court in which plaintiff Mountain Valley Pipeline, LLC (MVP), has sued a persons or persons who allegedly interfered with MVP's work constructing its natural gas pipeline. In this case, MVP has sued a single defendant, Madeline Ffitch. Pending before the court is Ffitch's motion to dismiss, which is fully briefed and was argued. For the reasons set forth herein, the court will grant in part and deny in part the motion to dismiss.

I. BACKGROUND

MVP, a natural gas company, holds a certificate from the Federal Energy Regulatory Commission (FERC) to construct and operate a new natural gas pipeline from Wetzel County, West Virginia, to Pittsylvania County, Virginia. (Compl. ¶ 2, Dkt. No. 1.) Work began on the

---

[1] Ffitch's motion to dismiss challenged the constitutionality of a Virginia statute, and the court granted the Commonwealth of Virginia's motion to intervene in this case and two other cases where defendants advanced the same argument. The Commonwealth submitted a brief and argued before the court as to the constitutional question, but the court does not reach that issue in this particular case. If the Commonwealth wants to be terminated as an intervenor in this case, it should file a brief motion with that request.

pipeline in 2017, but various aspects of the MVP Project have been challenged in numerous lawsuits.  On June 3, 2023, the Fiscal Responsibility Act of 2023 (the 2023 FRA) became law.  In that Act, Congress declared that timely completion of the MVP project is required in the national interest, and Congress ratified and approved all authorizations for completion of the project.  (*Id.* ¶ 3 (citing Pub. L. No. 118-5, 137 Stat. 10, at § 324(b) (c) (2023)).)  *See also Appalachian Voices v. U.S. Dep't of the Interior*, 78 F.4th 71, 75–76 (4th Cir. 2023) (explaining some MVP-related aspects of the 2023 FRA).

       The pipeline's FERC-approved route includes a crossing of approximately 3.5 miles in the Jefferson National Forest (JNF) in Monroe County, West Virginia, and Giles and Montgomery Counties, Virginia.  (Compl. ¶ 9.)  Between May and July 2023, two government agencies, (1) the United States Department of Agriculture, United States Forest Service (USFS), and (2) the United States Department of Interior, Bureau of Land Management (BLM), issued Records of Decision approving the Right of Way Grant and Temporary Use Permit to MVP to cross the JNF.  At the time of the events giving rise to this lawsuit, MVP was operating in the JNF pursuant to a Right of Way Grant, a Temporary Use Permit, and a Right of Way Closure Order.  (*Id.* ¶¶ 10–13, Exs. 1–5.)  *See generally United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 611 (2020) (discussing the authority and the process by which the Forest Service grants rights-of-way to pipelines).

       MVP alleges that Ffitch and others were involved in a "direct action campaign aimed at stopping the project by unlawful means."  (*Id.* ¶ 14.)  One of the tactics used in that "campaign" was for protestors to enter an MVP right of way and either place themselves around or in front of

equipment or attach themselves to equipment or the ground through sleeping dragon devices.[2] (*Id.* ¶¶ 15–16.)

On January 29, 2024, Ffitch entered the right of way in JNF in Giles County. "Supported by other unlawful protestors," Ffitch attached herself to drilling equipment on the right of way using a sleeping dragon device. (*Id.* ¶ 17.) She thereby interfered with MVP's work, and she had to be extracted by law enforcement. (*Id.*)

MVP asserts that Ffitch acted willfully, intentionally, and maliciously for the purpose of interfering with MVP's rights and work allowed under the Right of Way Grant, Temporary Use Permit, and the Closure Order. (*Id.* ¶ 18.) MVP claims that Ffitch caused it to incur damages, costs, expenses and attorneys' fees, and it also seeks injunctive relief, including permanent injunctive relief. (*Id.* ¶ 23.)

MVP's complaint invokes federal-question jurisdiction under 28 U.S.C. § 1331. (*Id.* ¶ 5.) It posits that the action "involves the application, interpretation, and enforcement" of the two Records of Decision, as well as the Right of Way Grant, Temporary Use Permit, and Closure

---

[2] There are different configurations for such a device, but in general terms,
> [a] "sleeping dragon" is used to slow the removal of a protestor from a protest location. A long metal pipe is secured in an immoveable object and the protester places their arm in the metal pipe. The arm is locked into place with a carabiner that is tied to the protestor's wrist. This set up enables protestors to unlock themselves, but prevents others from doing so. The metal pipe also prevents others from using bolt cutters to remove the protestor.

Christopher Rusnak, K.C. & Evelyn Rusnak, *In Defence of the Trees: Presenting the Case for Ancient Forest Rights*, 41 UCLA J. Env't. L. & Pol'y 361, 410 (2023). Below is a photograph of one possible configuration:

Alli Graham, *Mountain Valley Pipeline Protestors Charged After Using "Sleeping Dragon" to Attach Themselves to Equipment*, https://www.wsls.com/news/local/2023/09/05/mountain-valley-pipeline-protestors-charged-after-using-sleeping-dragon-to-attach-themselves-to-equipment/ (Sept. 5, 2023) (image credited to Virginia State Police).

Order. (*Id.* ¶ 6.) It also points to the 2023 FRA as "expressly supersed[ing] any law that is inconsistent with these authorizations." (*Id.* ¶ 7.)

>MVP asserts the following claims against Ffitch:
>
>>Count One – interference with MVP's easement and authorized work;
>>Count Two – common law conspiracy; and
>>Count Three – statutory conspiracy under Virginia Code § 18.2-499A.

(*See generally* Compl.)

## II.  DISCUSSION

### A.  Subject-Matter Jurisdiction

In her motion to dismiss the complaint (Dkt. No. 8), Ffitch seeks dismissal only under Federal Rule of Civil Procedure 12(b)(6). She did not challenge the court's subject-matter jurisdiction in her briefing. During argument, however, counsel suggested that subject-matter jurisdiction is lacking, pointing to the arguments made by defendants in *Mountain Valley Pipeline v. Ateto*, No. 7:23cv809 (W.D. Va.).[3] In any event, the court has an independent obligation to ensure that it has jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

For the same reasons set forth in *Mountain Valley Pipeline v. Ateto*, 7:23cv00809 (W.D. Va.), issued this same day, the court concludes that it has federal-question jurisdiction over MVP's interference-with-easement claim. The court incorporates as if fully stated herein its reasoning in that case. Accordingly, it will not dismiss the case for lack of jurisdiction.

### B.  Motion to Dismiss Under Rule 12(b)(6)

Ffitch argues that the complaint is subject to dismissal in its entirety under Rule 12(b)(6)

---

[3] One of the same attorneys represents Ffitch and the defendants in *Ateto*, and it appears that diversity jurisdiction does not exist in either case. Here, according to the address listed in the complaint, Ffitch is a citizen of Ohio. (*See* Compl. 1, Dkt. No. 1.) MVP is a citizen of seven states, including Ohio. *See* Compl. ¶ 5, *Mountain Valley Pipeline v. Hinz*, No. 7:24-cv-352 (W.D. Va.), ECF No. 1. In both complaints, MVP invokes only federal-question jurisdiction under § 1331.

for several reasons. First, she contends that Count One—interference with MVP's easement—fails to state a claim because a claim of easement interference is allowed in Virginia only against the servient landowner, not a third party. Because she is not the servient landowner, her argument continues, she has no duty to MVP and thus cannot be held liable in tort to MVP. Second, Ffitch asserts that Counts Two and Three are subject to dismissal because she is the lone defendant, and Virginia law does not allow a conspiracy claim to be brought against the only defendant who commits the underlying tort. Third, Ffitch asserts that Counts Two and Three fail to state claims for conspiracy because both fail to adequately allege the existence of a conspiratorial agreement and resulting damages. Fourth, and finally, Fitch contends that the business conspiracy count must be dismissed because the statute on which it is based is unconstitutionally vague.

MVP opposes the motion, asserting that its claims are valid legal claims and that it has adequately pled them.

1. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences in the complaint "in the light most favorable to the nonmoving party." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at

302. The court also may consider documents incorporated by reference into the complaint and "matters of which a court may take judicial notice." *Kashdan*, 70 F.4th at 700 (citation omitted).

    *2. MVP has stated a claim for interference with its easement.*

Ffitch first argues that an interference-with-easement claim in Virginia may only be brought by the easement holder against the servient landowner; it may not be brought against a third party. Thus, she claims that Count I must be dismissed because it does not state a valid claim. The court previously rejected this argument in a similar case, and it does so again here. *See* Minute Order, *Mountain Valley Pipeline v. Guidry*, No. 7:23-cv-00727 (W.D. Va. Mar. 4, 2024), ECF No. 15; Transcript of Hearing at 29, *Guidry*, No. 7:23-cv-00727, ECF No. 27 (setting forth grounds for ruling). The court set forth its reasoning in more detail in an opinion issued today in *Mountain Valley Pipeline v. Ateto*, 7:23cv00809 (W.D. Va.). For the same reasons set forth in that opinion, which the court incorporates herein by reference, the court concludes that MVP may bring an interference-with-easement claim against a third party like Ffitch, even if that party is not a party to the easement or the servient landowner. Thus, the court will deny the motion to dismiss Count One.

    *3. MVP's conspiracy claims are subject to dismissal.*[4]

Ffitch's first argument for dismissal of the conspiracy claims is the same one raised by the similarly-situated defendant in *United States v. Guidry*. The court already agreed with this same argument in *Guidry*, and it does so again here. *See* Minute Order, *Mountain Valley Pipeline v. Guidry*, No. 7:23-cv-00727 (W.D. Va. June 21, 2024), ECF No. 36. The court ruled from the bench in *Guidry*, and it sets forth its rationale briefly here.

---

[4] Because the court dismisses the two conspiracy claims on other grounds, it does not reach the issue of whether MVP has adequately pled either claim (inclusive of the issue of the proper pleading standard). Likewise, it does not reach Ffitch's arguments that the business conspiracy statute is unconstitutionally vague.

In seeking dismissal of both conspiracy claims, Ffitch argues that *Gelber v. Glock*, 800 S.E.2d 800, 293 Va. 497 (2017), forecloses a Virginia conspiracy claim against a single defendant who also is the sole person named in the substantive tort count underlying the conspiracy. (Mem. Support Mot. Dismiss 3–6.) She also relies on a decision from the District of Utah, to which the *Glock* court cites—*Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 803 (D. Utah 1988). Ffitch submits that both courts recognized that civil conspiracy exists to permit joinder of co-conspirators and recovery against multiple defendants for torts committed by one, and there is no point to allowing a conspiracy claim where it does not add another defendant because the substantive claim already asserts the same claim against the first defendant.

In response, MVP acknowledges the court's ruling in *Guidry* but restates its disagreement with that ruling. It cites to cases discussing joinder, and it maintains that the Fourth Circuit, in *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85 (4th Cir. 2019), allowed civil conspiracy claims to be brought against one co-conspirator without including the other. (Opp'n to Mot. Dismiss 5–6, Dkt. No. 16.)

As an initial matter, the court disagrees with MVP that this issue is procedural and disagrees that it is governed by federal joinder rules. Indeed, at least one other federal district court has interpreted *Glock* to set forth Virginia substantive law concerning the availability of state-law civil conspiracy claims. *E.g.*, *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1017–18 (E.D. Va. 2018).

Turning to *Glock* itself, MVP is correct that *Glock* is not on all fours with the case at bar. Indeed, the *holding* of *Glock* and the reasons it gives for why the plaintiff's conspiracy claim failed do not focus on this particular issue. At the beginning of the section on civil conspiracy,

7

the *Glock* court states, "Because the Executors did not establish damages, and a claim of civil conspiracy is not a proper vehicle under these facts to seek rescission, we conclude the circuit court did not err in granting [the] motion to strike the claims of civil conspiracy." 800 S.E.2d at 820.

> Then a second time, in concluding that section, the court explained that
>
>> the Executors did not prove damages and seek only rescission of the deed of gift and bill of sale. Although they have identified Linda and Philip as co-conspirators, they contend that it is Meryl who obtained the property through undue influence and fraud and have named her as the sole defendant from whom they seek relief. Under these facts, a claim for civil conspiracy against Meryl is not a proper mechanism by which the Executors can obtain rescission. *See Boisjoly*, 706 F. Supp. at 803–04 (noting that civil conspiracy "cannot be maintained in a suit involving a single defendant where the same underlying torts are also asserted by separate counts against the same defendant").

Thus, the *Glock* decision was primarily based on a lack of damages and the fact that the remedy of rescission is not damages and cannot be sought through a civil conspiracy claim. But in reaching its decision, the *Glock* court cited approvingly to the *Boisjoly* decision and also included language from it that strongly supports Ffitch's argument.

In particular, the Supreme Court of Virginia explained that "[t]he object of a civil conspiracy is to spread liability to persons other than the primary tortfeasor." *Id.* at 821; *see also Sines v. Hill*, 106 F.4th 341, 350 (4th Cir. 2024) (quoting same language from *Glock*). The *Glock* court cited to numerous cases, including *Boisjoly*, for this proposition. *See id.* ("Civil conspiracy is essentially a tool allowing a plaintiff injured by the tort of one party to join and recover from a third party who conspired with the tortfeasor to bring about the tortious act.") (quoting *Boisjoly*, 706 F. Supp. at 803). Importantly, the *Glock* court also quoted to the specific portion of *Boisjoly* that supports Ffitch's argument, nothing that civil conspiracy "cannot be

8

maintained in a suit involving a single defendant where the same underlying torts are also asserted by separate counts against the same defendant." *Id.* (quoting *Boisjoly*, 706 F. Supp. at 803–04).

In at least one other federal district court case applying *Glock*, the court relied on *Glock* to do exactly what Ffitch asks this court to do—dismiss a conspiracy claim against the same defendant named in the underlying tort count. *NorthStar Aviation, LLC*, 332 F. Supp. 3d at 1017–18. There, after first dismissing the conspiracy claim against a corporation (who was accused of conspiring with its agents), the court dismissed the conspiracy claims against the remaining individual defendant, Alberto. The court finds the reasoning of that case persuasive and equally applicable here:

> Plaintiffs argue that the conspiracy claim against Alberto can nonetheless survive because the Amended Complaint alleges that Alberto, Key, and Holcombe engaged in acts in furtherance of the conspiracy before Vulcan Aviation was formed in October 2017 Although the Amended Complaint does allege that Alberto, Key, and Holcombe began converting funds from NorthStar before Vulcan Aviation was incorporated, the conspiracy claim against Alberto must fail because the Supreme Court of Virginia has recognized the principle that a claim for civil conspiracy "cannot be maintained in a suit involving a single defendant where the same underlying torts are also asserted by separate counts against the same defendant[.]" *Gelber v. Glock*, 293 Va. 497, 535, 800 S.E.2d 800 (2017) (quoting *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 803-04 (D. Utah 1988)).
>
> That is precisely the case here; the Amended Complaint asserts all of the underlying tort claims against Alberto, the single remaining individual defendant in the action. As such, a claim of civil conspiracy is neither a necessary, nor a proper mechanism, for imputing liability to Alberto.

*Id.* at 1017–18.

The Fourth Circuit's decision in *L-3 Communications Corp. v. Serco, Inc.*, 926 F.3d 85, 92 (4th Cir. 2019), upon which MVP relies, does not compel a contrary result. Notably, *Serco*

did not address this issue directly and primarily cites to *Glock* for the elements of a civil conspiracy claim. There, the Fourth Circuit allowed a conspiracy claim against a single tortfeasor, but that case involved Virginia's "third-party rule" in tort. The third-party rule allows a conspiracy claim to be brought based on tortious interference with the defendant's own contract or business expectancy and is an exception to the general rule that the plaintiff cannot sue for tortious interference with its own contract. So, *Serco* allowed a conspiracy claim against a single defendant but there was no way to hold that defendant liable for the tortious interference because the interference was with its own contract. Thus, a civil conspiracy claim was the appropriate vehicle for liability. Here, by contrast, MVP has a tort claim in Count I against Ffitch, which is the tortious act underlying the conspiracy claims. Thus, *Serco* is distinguishable and does not control the outcome here.[5]

For these reasons, the court will grant the motion to dismiss Counts Two and Three, the two conspiracy counts.

### III. CONCLUSION

For the foregoing reasons, the court will deny in part and grant in part the motion to dismiss. The court will deny the motion to dismiss as to Count One—the interference-with-

---

[5] The court's research also disclosed at least one case where (on default judgment) the Eastern District of Virginia entered judgment against a single cross-claimant (the only one named in the cross-claim) on a civil conspiracy claim. *Truist Bank v. Kim*, No. 1:22-cv-1431, 2023 WL 4944653, at *2–*3 (E.D. Va. May 1, 2023). But in *Truist Bank*, the issue of whether a conspiracy claim could be brought against a single defendant who is also named in the tort claim underlying the conspiracy was not addressed or even referenced in the opinion. Thus, it is likely that no one raised it, and it certainly was not decided there. Moreover, *Truist Bank* is not binding on this court.

easement claim; it will grant the motion to dismiss the two conspiracy claims in Counts Two and Three. An appropriate order will be entered.

Entered: March 17, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge